TERRANCE McKANE *v.* M. M. GORDON AND RICHARD A. HOAR.

May Term, 1911.

Present: ROWELL, C. J., MUNSON, WATSON, HASELTON, AND POWERS, JJ.

Opinion filed November 13, 1911.

*Trials on Reference—Rulings and Findings—Review—Necessity for Exceptions Below—Attorney and Client—Fees—Voluntary Deductions—Effect—Term and Attorney Fees—Money Collected—Retention—Joint or Several Liability—Pleading— Specification—Construction—Undisputed Testimony—Record —How Collateral Paper May Be Made a Part Thereof.*

Under P. S. 1794, which is merely declaratory of the rule of practice that existed before its enactment, no exceptions to the report of a referee, auditor, or commissioner, or questions as to the admissibility of evidence, will be considered by this Court, unless they are stated in the exceptions to the report filed in the court below, except such questions as are submitted by the report itself.

In general assumpsit for money received by defendants as plaintiff's attorneys in payment of a judgment that they obtained in his favor, his specification, charging defendants with the amount so received, and crediting them with a commission of 20 per cent on the judgment "as per agreement," made the basis of the suit money had and received

by defendants for plaintiff's use, and so the fact that he failed to prove the basis of the credit allowed did not preclude him from recovering so much of the money paid defendants as they wrongfully withheld.

On an issue as to the value of attorney's services in a case in Supreme Court, the referee was not bound by the undisputed testimony of defendants' witnesses that the time charged for was actually spent, and that the per diem charges were reasonable, but could examine the briefs prepared to determine the time that ought to have been spent in their preparation.

In a suit between attorney and client involving the value of the attorneys' services, where it appeared that the attorney, in accounting to his client for a judgment collected, had voluntarily deducted from his bill $89.50, and on trial it was determined that he had overcharged his client $165, the overcharge should be diminished by the deduction, under the rule that, where an allowance is voluntary, the debtor by refusing to accept the settlement proposed opens the whole question, and the creditor is at liberty to insist on payment of the amount discounted.

Whether more than one attorney on the same side of a suit is entitled to charge term and attorney fees therein depends largely on the circumstances of the case, and is to be determined by the trier from a consideration of the facts.

In assumpsit against attorneys for money received, where plaintiff excepted to the judgment in his favor, but not on the ground that a check sent him to balance, and which he never accepted, was deducted from the amount that the attorney was found to have overcharged him, that point will not be considered on review.

An objection to a judgment for that it included an allowance for charges made for services rendered on Sunday will not be considered, where there is no finding to that effect.

Papers outside the regular files in the case must be specially referred to and made a part thereof, or they will not be noticed on review, and so, in a referee's report allowing for defendants' services and expenses as attorneys in a suit, a reference to defendants' expenses "as indicated by their accounts hereto atached" is insufficient to make the accounts a part of the report.

A contractual obligation is not joint merely because the obligees are two or more, for it is a question of intention, and though the obligation be joint in form, if the rights and interests of the obligees among themselves be several and not joint, the obligation is several.

Plaintiff employed defendants, two attorneys, to conduct certain litigation for him, and, after judgment in his favor, a check for the amount thereof payable to both defendants was indorsed by them and delivered by defendant H. to his stenographer, who indorsed it, took it to the bank and had it cashed, and delivered the money to defendant G., taking a receipt for it, and thereupon defendant G. paid her for defendant H. $1,400, which was his account for services and disburse-

ments, less a discount of $89.50, and from the amount left in his hands defendant G. paid certain bills connected with the litigation, reserved an amount sufficient to cover a pending trustee suit, and sent plaintiff a check for $107.55 to balance. *Held*, that defendants' liability for the money in an action of assumpsit brought by plaintiff on refusing to accept the settlement, was several, and not joint.

Under P. S. 1530, providing that in an action founded on a contract a plaintiff may have judgment against one or more of the defendants notwithstanding it is found that all the defendants are not jointly liable, where plaintiff sued two attorneys jointly in assumpsit for money received, and established only a several liability, he was entitled to judgment against one defendant, and he might elect which.

GENERAL ASSUMPSIT. Heard on the pleadings and report of a referee, and defendants' several exceptions thereto, at the September Term, 1910, Washington County, *Hall*, J., presiding. Exceptions overruled, and judgment for plaintiff. All parties excepted. The opinion states the case. See 77 Vt. 7, and 79 Vt. 13.

*William N. Theriault* and *Fred L. Laird* for the plaintiff.

*Richard A. Hoar*, *R. M. Harvey* and *M. M. Gordon* for the defendants.

POWERS, J. The action is general assumpsit. Each defendant pleaded the general issue, and defendant Gordon also pleaded book-account in offset. The case was tried before one styled a referee and auditor, whose report was accepted and judgment rendered thereon for the plaintiff. The case was argued before us on a bill of exceptions in behalf of the plaintiff, and bills in behalf of each defendant.

It is stated in the plaintiff's bill that no exceptions were taken in his behalf before the auditor, nor to the report. That none were filed in the court below, nor any claim made in respect thereto until the rendition of the judgment. In these circumstances, so far as the rulings of the referee are concerned, nothing is presented for review except such questions as are expressly submitted by the referee in his report. By P. S. 1794 it is provided that no exceptions to the report of a referee or questions as to the admissibility of evidence shall be considered

in this Court unless they are stated in the exceptions to the report filed in the court below. This statute is merely declaratory of the rule of practice as it had previously existed in this jurisdiction. Thus in *Graham* v. *Stiles*, 38 Vt. 578, a case decided long before the enactment of the statute, it was held that if one would avail himself of an error of a referee in admitting evidence, he should file exceptions to the report based on such error. And in *Walton* v. *Walton's Estate*, 63 Vt. 513, 22 Atl. 617, and again in *Manning* v. *Leighton*, 66 Vt. 56, 28 Atl. 630, upon a citation of our own cases, and without reference or allusion to the statute, which had then been in force some years, it was held that this Court would not review the rulings of a referee unless some question was submitted by him or exceptions to the report were filed in the county court. The rule is the same when a trial is had before a commissioner, *Wilder* v. *Stanley*, 49 Vt. 105, or an auditor, *Perry* v. *Whitney*, 30 Vt. 390, *Dexter's Admr.* v. *Dexter*, 37 Vt. 641, *Hard* v. *Burton*, 62 Vt. 314, 20 Atl. 269. This rule, it is to be observed, does not preclude a consideration of such questions as the referee submits in the report, *Hogan* v. *Sullivan*, 79 Vt. 36, 64 Atl. 234, of which there are several here presented which will be disposed of when reached.

The facts found by the referee show that this plaintiff brought a suit against certain parties for the recovery of damages on account of injuries received while in their employ. He engaged the defendants to bring and conduct that suit, but this was by contracts with them severally and not jointly. They continued to act as attorneys for the plaintiff in that litigation until final judgment was rendered therein. On June 2, 1906, the defendants in that suit drew their check for $3,623.26, the amount of the judgment and costs, to the order of M. M. Gordon and Richard A. Hoar, these defendants, and delivered the same to the defendant Gordon, who endorsed the check and delivered it to the defendant Hoar, who also endorsed it. The check was then delivered to a Miss Price, defendant Hoar's stenographer, who for some unexplained reason endorsed it, and took it to the bank and obtained the currency on it. This currency she turned over to Gordon and took his receipt for it. Thereupon, Gordon paid her for Hoar the sum of $1,400.,— the same being the amount of Hoar's account for services and

disbursements less a discount of $89.50. From the amount thus left in Gordon's hands, he paid certain bills connected with the litigation, reserved a sum sufficient to cover a pending trustee suit, and sent the plaintiff a certified check for $107.55, therein stating that it was "in full to date." The plaintiff has never cashed this check, nor has he ever accepted the same, either in settlement or part payment of this claim.

The plaintiff filed a specification as follows: "In the above entitled cause, the plaintiff specifies as the claim upon which he will rely in the trial of the same the following:

June 2. To cash received from Marr and Gordon, of Barre, Vt., for me in settlement of my judgment against them obtained in Washington County Court, and affirmed by the Supreme Court.......................... $3,623.25

Less commission of 20% on judgment of $3,450.00, as per agreement..............     690.00
                                              _____
                                              $2,933.25

This specification was neither withdrawn nor amended during the trial.

The defendants insist that, since the plaintiff failed to establish his claim that Gordon agreed to take the case on a contingent fee of 20% of the recovery, the plaintiff is out of court, and that he cannot recover on any other contract or theory than the one covered by his specification,—invoking the rule applied in *Aseltine* v. *Perry*, 75 Vt. 208, 54 Atl. 190, that a specification circumscribes the scope of the evidence and the plaintiff's right of recovery. But this claim is based upon a misconception of the ground of recovery set up in the specification. The basis of the suit as made by the specification is the money had and received by the defendants for the plaintiff's use,—$3,623.25. Against this sum, the plaintiff admitted a credit amounting to $690 on the basis of 20% of the judgment. Though the plaintiff failed to establish this basis of the credit allowed he was not thereby precluded from recovering so much of the sum paid to the defendants as they wrongfully withheld. It is as if a plaintiff allowed as a credit on the amount claimed a specified sum for a horse received of the defendant, and it

turned out in evidence that the sum named was incorrect or the property received was something else. In such case a recovery could be had without amendment of the specification. In *Greenwood* v. *Smith,* 45 Vt. 37, it was held that a plaintiff is not precluded by his specification from recovery upon a cause of action not included therein, but covered by the declaration, and proper for specification if it grew out of the subject matter of the specification actually filed, and the defendant admits such cause of action on trial. And in *Bates & Son* v. *Quinn,* 56 Vt. 49, an action of general assumpsit to recover money overpaid on settlement, it was held that the plaintiff might recover money belonging to him held by the defendant, though he failed to establish the special ground upon which he claimed to show the overpayment.

So it became the duty of the referee to investigate and pass upon the defendants' accounts. Having done so, the referee reports that Gordon overcharged the plaintiff $310., and that Hoar overcharged him $165. These overcharges were made in connection with the preparation and argument of the case in Supreme Court. In reaching his conclusions regarding this, the referee examined the briefs prepared to determine the propriety of the charges in connection therewith. The defendants say that this was improper, and that it was his duty to find according to the undisputed testimony of the witnesses, who said that the time charged for was actually spent, and the per diem charges reasonable. But we think the referee did just right in dealing with the matter as he did. The briefs themselves would afford some evidence of the time spent and of the time which ought to have been spent in their preparation, having regard for the interests of the client being served. There is a plain intimation of the propriety of such action in the last point disposed of in *Carpenter* v. *Gibson,* 82 Vt. 336, 73 Atl. 1030.

As we have seen, Hoar discounted his bill $89.50. The referee submits to the court the question whether that sum should be deducted from the overcharge of $165. In rendering judgment below, the court allowed this sum to Hoar, thereby reducing the overcharge to $75.50. The plaintiff says this was error, but we think it was correct. This allowance was

but a voluntary credit, in effect conditioned upon the acceptance of the settlement as a whole. If the plaintiff chose to contest this defendant's bill, he opened the whole question, and Hoar was at liberty to insist upon payment of the amount discounted. It is like the situation presented in *Hard* v. *Burton*, 62 Vt. 314, 20 Atl. 269, wherein it was held that the plaintiff was not precluded from recovering what his services were worth, though he had charged them at a less sum.

The plaintiff claimed that as a matter of law both defendants were not entitled to charge term and attorney fees. And this question was submitted to the court. The referee allowed these charges as made and they were included in the judgment below. In this we find no error. Whether more than one of the attorneys engaged on the same side of a suit is entitled to charge term and attorney fees therein is a question depending largely upon the circumstances of the case. It involves a consideration of the facts, which are for the determination of the trier. Here the referee has in effect found that such charges in this case were reasonable and proper, and we cannot disturb the finding.

We have also seen that Gordon sent the plaintiff a check for $107.55, which is now in the hands of the clerk. The referee submits to the court the question whether the amount of Gordon's overcharge should be reduced by the amount of this check. The court below deducted the check, making the amount in Gordon's hands which went into the judgment $202.45. The propriety of this may well be questioned, for the plaintiff has not accepted the check, but the plaintiff did not except to the judgment on this ground, and so is not in a position to complain.

The plaintiff objects to the judgment below because he says it includes charges made for services rendered on Sunday. But there is no finding to that effect. In speaking of the expenses of the suit, the referee says in the report that they were paid by the defendants "as indicated by their accounts hereto attached." This is not sufficient to make the accounts a part of the report, and consequently, though they may show that part of the charges are for Sunday work, we cannot look into them. Such papers, being outside the regular files in the case, must be specially referred to and made a part of the case, or they will not be noticed. *Wheeler* v. *Sears*, 19 Vt. 559.

Both defendants excepted to the judgment on the ground that, under the finding. that there was no joint employment of the defendants, no judgment could be rendered against them. That the plaintiff made no arrangement with the defendants jointly is not conclusive of the question. The action is based upon the implied promise arising from the receipt of the plaintiff's money. The character of this obligation is to be determined from the particular facts and circumstances involved. A contract is not joint merely because two or more are parties to it on the same side. Though it be joint in form, if the real rights and interests of the obligees among themselves be several and not joint, this fact will ordinarily control. So it was held in *McIntosh* v. *Zaring*, (Ind.) 38 N. E. 321, that where several attorneys were employed to contest a will, and the contract, though signed by all, provided that a specified and different proportion of the recovery should be paid to each, they could not join in a suit for their pay. It is a question of intention, and the contract will not be joint if intended to be several, *Widner* v. *West Un. Tel. Co.*, (Mich.) 11 N. W. 407. In determining this question, a consideration of the subject matter, the purpose, the consideration and all the circumstances attending the transaction becomes important. *Atlantic & St. A. B. Ry. Co.* v. *Thomas*, (Fla.) 53 So. 510.

The question presented here is not whether these defendants could have so conducted themselves with reference to the check as to become jointly liable for so much of its avails as were not properly accounted for, but whether they did in fact so conduct themselves. It is apparent that they had no joint interest in the judgment. The plaintiff says in his brief that the docket entries show that each of the defendants filed a notice of an attorney's lien. We might refer to these entries though they are not made a part of the case, *Spaulding* v. *Warner*, 57 Vt. 654, but it is apparent that such liens, if asserted, were several and not joint. Nor did any of the avails of the check come to their joint possession or control. The only connection which Hoar had with the check was for the purpose of endorsement. It does not affirmatively appear that his stenographer was acting for him when she took it to the bank and cashed it. But assuming that she was, the method adopted discloses a plain intention

of keeping the interests several and not allowing them to become joint. The stenographer took all the money to Gordon, the leading counsel, and delivered it to him in exchange for his receipt for it. He then paid her the amount of Hoar's bill less the discount. All these circumstances point to a several liability and not to a joint liability, and we hold that such was the result.

It does not follow, however, that the defendants were entitled to a judgment. While it is true that at common law a plaintiff must recover against all the defendants or against none, and that he cannot have separate judgments against each, *Machine Co.* v. *Norris*, 39 Vt. 393, and if a plaintiff alleges a joint contract and fails to prove it, he fails altogether, *Wright* v. *Gear*, 6 Vt. 151, 27 Am. Dec. 538, since the enactment of P. S. 1530, a plaintiff may have judgment against one or more of the defendants though no joint liability is established. In *Reynolds* v. *Field*, 41 Vt. 225, it is said in effect that this statute was intended to cover all cases wherein too many are sued, and that judgment may be taken against so many as are found liable. It is true that that was a case where one defendant was liable, and the other was not; but *Powers* v. *Thayer and Wait*, 30 Vt. 361, was a case wherein both defendants were liable, but for different amounts. It was held that there could be no joint recovery, but that the case came within the statute, and that the plaintiff might elect or the court order which defendant should be discharged. The judgment below against one of the defendants alone was affirmed. Under the authority of these cases it must be held that the plaintiff was entitled to a judgment against one of the defendants, and the case will be remanded that he may proceed in the county court as he may be advised.

NOTE. The foregoing opinion was read at the October Term, 1911, and the case held pending a conference of counsel, who now announce a settlement of the case, and it is so entered.